BRYAN K. THEIS, ESQ., State Bar No. 209068
**Theis Law Group**
533 Second Street Suite 400
Encinitas CA 92024
Tel: (213) 261-4240
Fax: (213) 995-9830
Email: bryan@theislaw.com

Attorney for Plaintiff Scott Kohn

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KOHN,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL CHOBANIAN,<br>VIPAN KANT BHOLA,<br><br>　　　　Defendants. | Case No. 2:16-cv-07598<br><br>**COMPLAINT FOR DAMAGES FOR MALICIOUS PROSECUTION** |

Plaintiff SCOTT KOHN, through counsel, alleges and complains as follows against defendants MICHAEL CHOBANIAN and VIPAN KANT BHOLA:

## JURISDICTION AND VENUE

1.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of Nevada, and Defendants are individual citizens of Wisconsin and California. The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.  Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) in that the unlawful conduct that gives rise to these claims occurred within the Central District of California. One of the defendants also

1 resides within the Central District of California. The Western Division is the
2 proper division in that said unlawful conduct took place primarily within Los
3 Angeles County.

## THE PARTIES

4  
5      3.    Plaintiff, SCOTT KOHN ("Kohn" or "Plaintiff"), is, and at all times
6 mentioned herein was, over the age of 18 and a resident and citizen of the State of
7 Nevada.

8      4.    Defendant MICHAEL CHOBANIAN ("Chobanian") is, and at all
9 times mentioned herein was, over the age of 18 and a resident and citizen of the
10 State of Wisconsin.

11      5.    Defendant VIPAN KANT BHOLA ("Bhola") is, and at all times
12 mentioned herein was, over the age of 18 and a resident and citizen of the State of
13 California, Central District.

14      6.    Plaintiff is informed and believes, and on that basis allege, that at all
15 times herein mentioned each of the Defendants was an agent, servant, employee,
16 and/or joint venturer of each of the remaining Defendants, and was at all times
17 acting within the course and scope of such agency, service, employment, and/or
18 joint venture, and each Defendant has ratified, approved, and authorized the acts of
19 each of the remaining Defendants with full knowledge of said facts.

20      7.    Defendants, and each of them, aided and abetted, encouraged, and
21 rendered substantial assistance to the other Defendants in breaching their
22 obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid
23 and abet and substantially assist the commissions of these wrongful acts and other
24 wrongdoings complained of, each of the Defendants acted with an awareness of
25 its/his/her primary wrongdoing and realized that its/his/her conduct would
26 substantially assist the accomplishment of the wrongful conduct, wrongful goals,
27 and wrongdoing.
28 ///

## STATEMENT OF FACTS

8. **The Underlying Judgment.** In May 2000, the Superior Court of California entered a fraud judgment against several defendants including an individual named Susan Chobanian. Susan Chobanian is the daughter of Defendant Michael Chobanian.

9. Plaintiff purchased the rights to the judgment. In 2010, Plaintiff filed an action for renewal of the original judgment, known as *Kohn v. Medical Clinic et al.*, Los Angeles Superior Court Case Number BC441260.

10. As a result of the filing the *Kohn v. Medical Clinic* renewal action, Plaintiff retained the right to enforce the original judgment, even after the original judgment expired. See *U.S. Capital v. Nickelberry*, 120 Cal.App.3d 864 (Cal.App.1981), which recognizes that "[o]nce an action [to renew a judgment] is begun within the statutory period [per Code of Civil Procedure §337.5], the creditor's right to recover remains alive, even though the 10-year period may subsequently expire."

11. In September 2012, Plaintiff discovered that Susan Chobanian had control of a bank account through Bank of America established in the name of her deceased mother, Mary Chobanian.

12. Mary Chobanian is the deceased wife of Defendant Michael Chobanian.

13. Subsequent to the entry of judgment against her, Susan Chobanian, a physician, had been depositing patient payment checks into the account established in her deceased mother's name. Susan Chobanian also directed patients to make checks payable to Mary Chobanian which were then deposited in the account.

14. Susan Chobanian used funds from the account to pay personal expenses. She would write checks and sign in the name of her mother Mary, who had passed away years earlier.

15. Susan Chobanian's misuse of the "Mary Chobanian" account was a

fraudulent effort to conceal income and funds from the judgment creditor's attempts to enforce the judgment.

16. In October 2012, Plaintiff obtained an Affidavit of Identity naming "Mary Chobanian" as an alias of the judgment debtor, Susan Chobanian.

17. **The Bank Account Levy.** Plaintiff had a levy served on the bank pursuant to California law, and the Mary Chobanian account was frozen.

18. Thus, by October 2012, the process had reached a crucial stage: the true account owner had a clear opportunity to contest whether the levy was proper. He or she could have filed a claim of exemption with the levying officer per CCP §706.105, or a motion to recall or quash the writ of execution or to vacate the levy. Or, crucially, any *third party* (such as this defendant Michael Chobanian) could have challenged the writ pursuant to CCP §720.110.

19. On or about November 14, 2012, Defendant Chobanian, through Defendant Bhola, wrote a letter to Plaintiff. Said letter alleged that "[t]here appears to be substantial misrepresentations [sic] made to the Court regarding the account." The letter demanded the "return" of the levied funds, and concluded:

> "Your failure to promptly rectify this wrongful taking with [sic] cause me to file a motion with the Court seeking an Order rescinding the Writ of Execution, return of the funds, along with appropriate sanctions. I must receive notice that the funds will be returned within the next five (5) days or I will proceed with the motion before the Court."

20. In the November 14 letter, Defendants threatened to bring a motion to "rescind" the levy if Plaintiff did not put a stop to it. But yet, neither Defendants nor any other entities ever brought any motion to challenge the levy on the "Mary Chobanian" account.

21. In the November 14 letter, Defendants admit that they were aware of the levy on the "Mary Chobanian" account while it was in process, and that they

knew that they could have brought a motion to challenge the levy. But Defendants failed to do so.

22. The levy on the "Mary Chobanian" account was unopposed, and the levying officer disbursed $440,636.22 from the account to Plaintiff in December, 2012.

23. In any event, if Defendants had actually brought a motion and challenged the levy, they would have failed. In fact, the Affidavit of Identity was valid, and ample evidence exists that would clearly establish that the money in the "Mary Chobanian" account actually was traceable to the judgment debtor Susan.

24. **The Underlying Action.** On December 21, 2012, Defendant Chobanian, through his attorney Defendant Bhola, sued Plaintiff for conversion and other causes of action following the completed levy. That case was entitled *Chobanian v. Kohn*, Superior Court of California – Los Angeles Case No. BC497911 (the "Underlying Action").

25. The original complaint filed by Defendants in 2012, as well as the amended complaint added in February 2014, were characterized by a complete lack of probable cause in their favor. In particular, Defendants' pleadings sought to find Kohn liable for the act of conducting the levy itself, despite the fact that bringing a bank levy is absolutely privileged conduct pursuant to the litigation privilege set forth in California Civil Code §47 (b).

26. Defendants' conduct in the Underlying Action was characterized by an extremely lengthy and unusual assortment of meritless, unsupported, and otherwise frivolous filings and arguments.

27. On multiple occasions in the Underlying Action, Defendants gave ex parte notice for hearings, and then failed to bring any ex parte application.

28. Defendants' briefs in the Underlying Action were frequently filled with irrelevant arguments and incorrect conclusions of law. Defendants spent months and hundreds of hours of attorney time pursuing meritless and improper

arguments, all of which were ultimately rejected by the trial court and again before the Court of Appeal.

29. For example, on January 7, 2014, two weeks before the original trial date, Defendants brought an ex parte application for leave to file a first amended complaint (the "FAC"). The proposed FAC added causes of action for abuse of process and unfair competition, and also added other defendants. At the ex parte hearing, Judge Fruin ordered that the January trial be pushed back to June, 2014, set a briefing schedule, and set the motion for hearing on February 27, 2014.

30. On February 27, 2014, the trial court granted Defendants' motion.

31. However, immediately following the February 27, 2014 hearing, Defendants embarked upon a frenzy of correspondence and ex parte applications, all premised upon the theory that the FAC did not exist and was never the operative pleading. Defendant Bhola wrote at least a dozen letters and emails to various parties and attorneys, gave notice of five separate ex parte applications, and filed two regularly noticed motions. This intense activity had the effect of massively increasing the workload on Plaintiff's attorney, and the resulting legal bills for Plaintiff's defense.

32. Even after the trial court ruled that the FAC was, in fact, the operative pleading, Defendants continued to spend enormous amounts of time and resources in pursuit of their meritless argument that "the FAC does not exist."

33. In May, 2014, the trial court granted Plaintiff's anti-SLAPP motion to strike the FAC, and entered judgment in favor of Plaintiff. The judgment was upheld on appeal, and a remittitur was entered on November 25, 2015.

34. It should be noted that Plaintiff did not pay for any legal fees or other expenses relating to the appeal of the Underlying Action, and did not receive any money from the settlement of the appeal bond posted by Chobanian therein.

35. **Plaintiff's Damages.** Defendants' dogged pursuit of the Underlying Action cost Plaintiff dearly in legal fees.

36. Plaintiff incurred and paid fees to his attorney, Paul Young, for legal review and consultation, litigation services, expert fees, and expenses. The expenses included Plaintiff's defense against Defendants' repeated and meritless motions; review and responses to abundant discovery requests and correspondence; and frequent responses to Defendants' ill-informed legal arguments.

37. The Underlying Action was particularly characterized, above all else, by Defendants' extremely lengthy briefing and argument on virtually every point, motion, discovery request, and letter, in which Defendants raised the "the FAC does not exist" argument whenever possible. Defendants' verbosity and stubbornness had the effect of massively increasing the workload on Plaintiff's attorneys.

38. Plaintiff's legal bills for December 2012 through 2015, for his defense in the Underlying Action, totaled approximately $284,120.21.

## FIRST CAUSE OF ACTION

## MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS

39. Plaintiff realleges and incorporates by reference each and every allegation contained in all previous paragraphs of his Complaint as though fully set forth herein.

40. The above-described litigation was initiated by Michael Chobanian and his attorney, Vipan Kant Bhola, and resolved in favor of Kohn. It was initiated without probable cause and based on statements known by Michael Chobanian at the time to be false.

41. Michael Chobanian and Vipan Kant Bhola initiated and prosecuted the above-described litigation with malice, in that they intended to assist Susan Chobanian with fraudulently evading a valid money judgment against her and concealing her income and funds from the judgment creditor.

///

**WHEREFORE**, the Plaintiff requests judgment against Defendants as follows:

1. For compensatory damages. In the event of default Plaintiff demands $284,120.21;
2. For punitive damages according to proof;
3. For statutory costs, interest, disbursements and attorneys' fees, and
4. For such other relief as the Court may deem just and equitable.

DATED this 12th day of October, 2016.

                        THEIS LAW GROUP

                        /s/ Bryan K. Theis
                        Bryan K. Theis, Esq. for Plaintiffs